|   43   |  437  |
|  e82   |  698  |

Mary A. Gilliam v. Chancellor & Murray, Exr's., etc.*

1. Chancery Court—Jurisdiction.—Where the chancery court can afford complete and adequate remedy, and, by one litigation and decree, adjudicate the rights of the

*In the preparation of this case the reporter has felt justified in omitting entirely such portions of the arguments as relate to questions not considered in the opinion of the court.

parties, it may take jurisdiction over the entire subject matter, and if necessary, enjoin a party from proceeding in a suit in the probate court, when such suit only embraces part of the subject.

2. SAME—LEGACIES—ANTE-NUPTIAL CONTRACTS.—Where the widow claimed under an ante-nuptial contract, and also under the will of the husband. It is competent for the chancery court in a controversy whether the legacy is in satisfaction of the contract, to enjoin a suit in the probate court for the legacy, and to draw to itself cognizance over both subjects.

3. LEGACIES—ADEMPTION AND SATISFACTION—PRESUMPTIONS.—If the benefit to the donee be different in "species" or of less value, the presumption of satisfaction will not arise; and such presumption may be repelled by the acts and declarations of the testator. Story Eq., § 1102. But the presumption in equity is against double portions.

4. SAME—WILLS—EVIDENCE—Whether the legacy (according to many authorities) was in performance, and satisfaction of an antecedent covenant, or was a gift, might be proved by extrinsic evidence, or gathered from the face of the will.

5. ADEMPTION—TENDENCY OF MODERN ADJUDICATIONS.—The tendency of modern cases is not to push the doctrine of presumption, satisfaction or ademption further. Many courts question its propriety, and accept and act upon it as a rule of equity, resting on a weight of authority, not to be departed from.

6. WILLS—CONSTRUCTION—EVIDENCE.—If a will itself, fairly interpreted, expresses the testator's mind on the subject, then the necessity to resort to extraneous aid does not arise.

7. SAME.—In the construction of wills it is always competent to prove, by parol, the situation and surroundings of the testator as respects his family and property.

8. SAME—CASE AT BAR.—From the face of the will, the conclusion is reached that the legacy was meant to be in satisfaction of the provision of the marriage contract, and, referring to the parol testimony, it was deduced that the legacy was intended to have been paid in Confederate money. But the widow was not entitled to both the provision for her in the "articles" and the legacy, but the former was not contem-plated to be paid in Confederate money.

Cross-appeal from the chancery court of Chickasaw county. BRADFORD, J.

In the month of March, 1864, Littlebury Gilliam and Mary A. Dennis entered into a contract of marriage (then soon to be consummated), wherein, among other things, it was stipulated that if the said Littlebury Gilliam should depart this life before the said Mary A. Dennis, and the net money made, and increase of property as aforesaid (certain property of both parties put into a partnership created by said contract), shall not make the share of the wife, upon division, worth five thousand dollars, to be ascertained by fair valuation, the deficit, whether in money or property, or both, shall be made up from his estate; and in consideration of which, the said Mary A. Dennis renounces all right or claim to which she might otherwise be entitled under the statute laws of the

state of Mississippi, to a share of his estate, such as dower, child's part, year's allowance, etc.   In the latter part of the same year, Gilliam died, leaving a last will and testament, in which, among other provisions, is the following, to-wit: His wish is, " that J. S. Chancellor and B. Murray administer on his estate, and pay all of his just debts, and see that his contracts are fulfilled, and that his wife, Mary Ann Gilliam, have a dowry of five thousand dollars in currency," etc.

On the 14th April, 1865, the complainant filed in the chancery court of Chickasaw county, her bill for the recovery of the five thousand dollars jointure under the marriage contract.   And about the same time, filed her petition in the probate court of Chickasaw county, to recover the legacy of five thousand dollars, under the will of her husband, Gilliam. In their answer (which they make a cross-bill) to the complainant's bill in the chancery court, the executors set up as a defense, that the legacy in the will was intended by the testator as a payment and satisfaction of the jointure of five thousand dollars secured in the marriage contract, and pray for an injunction restraining the complainant from prosecuting her petition in the probate court, and that she may be compelled to bring her whole complaint into the chancery court, for settlement.   The court below, on final hearing of the cause, decreed that the complainant have and recover of the defendants, the sum of five thousand dollars, in lawful money of the United States, with interest from the time of the testator's death, amounting to the sum of six thousand and seventy-five dollars, principal and interest; and that said amount carry interest, at the rate of six per cent., until paid. It was also further ordered and decreed that the complainant be perpetually enjoined from the further prosecution of her said suit, in the probate court, for the recovery of said legacy.

The appellant assigned the following errors;

1st. The court erred in overruling the 1st, 2d, 3d, 4th, 5th, and 6th exceptions of complainant to the depositions of Mary Ann Gilliam, B. F. Gilliam, E. V. Turner, N. C. Wright, and

B. Murray, and in receiving their testimony for any purpose relating to the issues in the case.

2d. The court erred in deciding that the legacy of five thousand dollars, in the will of Littlebury Gilliam, deceased, was intended to be a payment and satisfaction of the sum of money sued for under the contract, and in perpetuating the injunction granted defendants, to restrain complainant from prosecuting her suit for said legacy, in the probate court.

3d. The court erred in entertaining jurisdiction of the said legacy, a "testamentary matter," then being litigated in the probate court; or, if rightfully taking such jurisdiction, in not holding it a charge against the estate of defendant's testator, cumulative of, and in addition to, the sum due upon said contract, for which only it entered up said decree.

The appellees assigned the following errors :

1st. The court erred in sustaining the exceptions of complainant to the depositions of Mary Ann Gilliam, Mrs. E. V. Turner, B. F. Gilliam, B. Murray, and N. C. Wright, offered by the defendants, in the court below.

2d. The decree of the court is erroneous in awarding to the complainant five thousand dollars and interest, under the marriage contract, to be paid in the lawful currency of the United States. It was a contract made in 1864, and was to be performed in 1864.

3d. The court erred in admitting, as evidence, the unstamped marriage contract of L. Gilliam and Mrs. Dennis.

*C. D. & J. D. Fontaine,* for the appellant.

The first question presented by the assignment of errors is, had the chancery court jurisdiction of the matter of the prayer of the said cross-bill? The jurisdiction of the probate court is defined in the constitution, art. 4, sec. 18, Rev. Code, p. 30. This grant is full, complete, and exclusive as to the administration of estates and matters testamentary. Powell et' al. v. Burrus, 35 Miss, 615–16. And the chancery court has no jurisdiction of the subjects confided to the probate courts. Blanton v, King, 2 How., 856 ; Carmichael v.

Browder, 3 How., 252 ; Phipps v. Probate Judge, 5 How., 68 ; Ratliff v. Davis, 38 Miss., 107 ; 1 Freeman's Ch. R., 136 ; Chilton's Probate Law and Practice, 8 ; Vertner and wife v. McMurran, admr., 1 Freem. Ch. Rep., 149 ; Green v. Creighton, 10 S. & M., 159 ; also, Hamberlin v. Terry, 7 How., 147 ; Jones et ux. v. Irwin's exrs, 23 Miss., 364.   A court of equity will not entertain jurisdiction to construe a will, no other ground of equity existing.   2 McCord's Ch. Rep., 26.   Nor will it interfere with a will once admitted to probate.   7 How., 143 ; 2 How., 806.

As to the mode of raising the question of jurisdiction in such cases, see Story's Eq. Pl., 4 ed., p. 9, sec. 30 ; Brown v. Bank of Mississippi, 31 Miss., 454 ; 2 Rob. Prac., 300 ; citing. 1 Johns. Ch., Rep., 428 ; Rob. Prac., 297 ; 1 H. & M., 18 ; 4 H. & M., 473 ; 3 Rand., 78 ; Leigh., 6 ; 4 Conn., 727 ; 2 Paige, 509 ; 4 Johns., 679.   If a demurrer would hold to a bill, the court, though the defendant answer, will not grant relief upon the hearing.   Mitford's Pl., 3 ed. p. 100 ; also, Smede's Dig., 121 ; Bemey v. Turner, Walker's R., 489.   Want of jurisdiction may be taken advantage of at any stage of the proceedings, and where it has been submitted to by answer, the cause will be dismissed on motion at the final hearing. Teer v. Moorer, 1 Bailey's Ch. Rep., 62 ; 2 U. S. Eq. Dig., p. 146 and 147, §§ 206, 207-209, 210, 211, 212-214, 215, 216-220, 221-225 ; Underhill v. Van Courtlant, Paige's Ch. R., 45, 46 ; 2 Johns. Ch. R., 339 ; Henderson v. Mitchell, 1 Bailey's Ch. R., p. 113 ; Cable v. Martin, 1 How., 558 ; Davis v. Roberts, 1 S. & M. Ch. R., 543 ; Livingston v. Livingston, 4 Johns. Ch. R., 287 ; Osgood v. Brown, 1 Freem. Ch. R., 392.   The proceedings which are here sought to be enjoined, are provided and directed by express statute.   Rev. Code, p. 454, art. 118.

The allegations of the defendant's cross-bill presented two questions for adjudication :

1st.  Whether the five thousand dollars secured by the marriage contract, were payable in Confederate States treasuary notes, or in gold and silver, the currency of the constitution ; and 2d.   Whether the dowry of five thousand dollars

in currency bequeathed in the will, was intended to be in satisfaction and discharge of the former named sum, or was cumulative thereof, and in addition thereto.

The *prima facie* fact that the payment of the contingent sum of $5,000 was to be in Confederate treasury notes, is rebutted by the following facts and circumstances:

1st. Because it was to be paid on a contingency, remote, and not expected to occur for many years, and might, under possible circumstances that might occur, never be paid in money; 2d. Because the probable proceeds per annum of the joint property, would exceed $5,000 in Confederate money; 3d. Because the personal property of Littlebury Gilliam alone, was appraised at $32,000 after much depreciation in value; 4th. Because the sworn bill, which is evidence under the statute, avers that gold and silver only, was contemplated. Revised Code, p. 554, art. 94; 5th. Because this evidence is uncontradicted, except by the hearsay statement of the children of the testator, which is not legal evidence; 6th. Because, even if the declarations of the testator at the time of making his will as to his intentions, were competent evidence in the construction of any part of the will, which we deny, they certainly are not admissible to vary or contradict the marriage contract, or to show in what kind of currency the sum of money therein specified, was payable; 8th. And the negative fact, that no particular kind of funds were mentioned, as shown by the subscribing witnesses.

2d. The question arises then, was it the intention of the testator to satisfy the above sum of $5,000 secured in the marriage contract, by the devise of $5,000 in and by his will to be paid in Confederate currency. Though the amount is the same in each instrument, yet any presumption arising from that fact, that the legacy in the will was intended as a payment and satisfaction of the sum secured by the contract, is rebutted by the following facts:

1st. The debt and legacy are not *ejusdem generis*, the latter is money, gold and silver, the former is currency; 2d. The latter is worth $5,000, the former $200, if in Confeder-

ate money ; 3d. The amount of jointure had not accrued due until after the testator's death, a time before which it could not mature ; 4th. The contingency of there being a deficiency in the net increase and profits of the property brought into the matrimonial partnership ; and 5th. The will directs the payment of the debts, that contracts be carried out, and then makes the gifts of the legacy.

The old rule of law on this subject, " that where the legacy is equal to or greater than the debt, it is a satisfaction," became so obnoxious to the courts that it has been greatly modified, and its application becomes rather an exception than a rule. Foublanques Equity (Lausatt's ed.), pages 571–575, note c ; Prob. Court Law and Pract. (Chilton), 182 ; 1 Green Ch. Rep., p. 1 ; 5 Cow., 368 ; 8 Cow., 246 ; Toller on Exrs., 337, 338 ; 2 Lomax on Exrs., 117–178, 179 ; 3 Murdock, 98 ; 4 Wendell, 443 ; 12 Wendell, 67–352 ; Tuck. Com., book 2, p. 446 ; 12 Mass., 391 ; 2 Hill, 567 ; 1 Devereux Eq., 108 ; 6 Rand., 176. First, The legacy is not *ejusdem generis* with the amount in the contract, or second, if it is, and be less in amount, or in any particular less beneficial. Third, If the debt was not due, or accrued afterwards ; or fourth, if the legacy was given upon a contingency ; fifth, or though greater in amount, is to be paid at a future day ; sixth, or that there is an express direction in the will for the payment of debts.

Can parol evidence of the intention of the testator, touching this matter, be admitted ? On this point counsel refer to the following authorities : Redfield on the Law of Wills, 540, § 2 ; Love v. Buchanan, 40 Miss., 758 ; 1 Johns. Ch. R., 233 ; 4 Mo., 760 ; Fowler v. Fowler, 3 P. Williams ; Fry v. Porter, 1 Md. R., 300–310 ; Eaton v. Benton, 2 Hill N. Y., 576 ; Toller on Exrs., 338–366 ; Mathews on Presumptive Ev., 107–118 ; Cheny's case, 1 P. Williams, 409, note 1 ; 1 Redfield on Wills, 540, 541, note 6 ; 3 Greel. Ev., § 366, p. 338 ; 3 Cow. and Hill's ; Phillips on Ev., 1384, 1385, 1386, 1387 ; 4 Kent, 9th ed., 539, 540. As to the legal definition of the word *currency*, see Bouvier's Law Dic., 358 ; Constitution U·

S., § 10, art. 1, construed in Craig v. State of Missouri, 4 Peters, 116; and especially Mitchell v. Hewitt, 5 S. & M., 361, and authorities cited in the opinion and in Peter's brief; and 40 Miss., *supra.*

*J. A. Green,* on same side.

The probate court had exclusive jurisdiction of the will of Gilliam, and the fact of the appellant bringing her suit in the chancery court for the enforcement of the terms of the marriage contract did not deprive the probate court of its jurisdiction, or confer it, as to the will, upon the chancery court. And that each court might have exercised its particular jurisdiction, without any conflict or hardship to either party, see the following state authorities: 2 Howard, 822; ib., 856; 3 Howard, 252–258; 4 Howard, 458; 7 How., 143–162–201–316; and Freeman's Chancery Reports, 501.

The legacy is not a satisfaction of the debt created by the marriage contract. 2 Redfield on Wills, 215, et seq; 2 Roper, 40. When the debt and legacy are of different natures, 2 P. Williams, 613; 1 Vesey, 298; 2 Vesey, 463; Story's Equity, 1101, et seq. Courts lay hold of any circumstance, however trifling, to raise a presumption that the testator did not intend the legacy as a satisfaction of the debt. 2 Roper, 1050; 3 Ves., 516. As to when there is a direction in the will as to the payment of debts and legacies, 1 P. Williams, 408; 2 Story's Equity, 1122; 1 Vesey, 519; Williams on Executors, 805. The will provides that the legacies shall be discharged in currency. The rule is different when the parties stand *in loco parentis;* in such cases a legacy is presumed to discharge a bounty. 1 Vesey, 534; 3 Ves., 516; 6 Ves., 309; 15 Vesey, 509. Parol evidence is not admissable to show intention. 2 Redfield, 543; 3 Pierre Williams, 313; 18 Ves., 152; 1 Johnson's Ch. Rep., 233; 5 Ves., 85; Story's Equity, 1114; 1 Greenleaf, 296; Love v. Buchanan, 40 Miss., 758; see Wagrams Rules, 1 Redfield, 502. As to the construction of the will, in connection with the marriage contract, 1 Redfield, 438, 439. That Scriviner's opin-

ion is not admissible, but admitted in this case. 1 Redfield, 439. The testimony of such witnesses is admissible to alter, explain, or vary the terms of a will, or the intention of the testator, only in two specified cases:

1st. When there is a latent ambiguity, *dehors* the will, as to the person or subject matter to be described.

2d. To rebut a resulting trust. 40 Miss., 758, and cases there cited.

*Reuben Davis*, for the appellees,

Insisted that the chancery court having assumed jurisdiction of the case made by the complainant's bill, is likewise bound to take jurisdiction of the matters set up in the defendant's cross-bill, so far as they amount to a defense to the complainant's cause of action. Equity having taken jurisdiction for one purpose, will draw to it all other matters, the settlement of which is necessary to complete justice between the parties. It avoids multiplicity of suits and circuity of action touching the same matter. Fowler v. McCarthy, 27 Miss., 516; Mitford's Ch. Pl., 36; also 1 How. R., 558; 4 Johns. Ch. R., 455.

It is insisted, however, that this question of jurisdiction cannot be raised at this stage of the proceedings; that this objection must be by demurrer *prima die*, and cannot be raised after answer. 1 Bailey's Eq. Rep., 187; Mitford's Pl., 100–135–173; 1 Vernon, 59; 1 Eden, 190; 2 Johns. Ch. R., 369; ib., 463; 1 Vernon, 446; 4 Johns. Ch. R., 290; 1 McCord's Ch., 242; Walker's R., 307; 1 How., 558; Trelawny v. Williams, 2 Vernon Ch., 483. The rule that the answer admits the jurisdiction is too plain to require further notice.

Did the court err in admitting extrinsic evidence touching the testator's intention in giving the legacy of $5,000. The law presumes that a legacy is an ademption, satisfaction, or performance of the contract. To ascertain whether this is so or not, the court undertakes to ascertain the testator's intention; and resorts to parol testimony of facts *dehors* the will. We contend that it is legal to do so. *Ex parte* Pye Dubort, 18 Vesey, 153. Presumptions, strictly speak-

ing, are rules of general law dispensing with complete proof. Gresley's Eq. Ev., 363 ; ib., 367, note *t*; 1 Vesey, 108; 3 B. C. C., 62. Declarations made at the time of making the will, are competent to explain intention. 2 Vesey, Jr., 465; Roberts on Wills, 453–455. As to latent ambiguities, 27 Miss., 630; Robert's on Wills, 442–461–466–471; 6 Vesey, Jr., 42; 1 Vesey Jr., 266–267. Legacies have three aspects—portions, satisfaction of debts, and performance of contracts— especially ante-nuptial contracts. Mrs. Gilliam was to have $5,000, in lieu of her dower, and if that sum was not raised out of the copartnership, then she was to have it out of the estate. We aver that this legacy is a performance, or if not a performance, it is at least a satisfaction of the ante-nuptial contract. As to the distinction between cases of satisfaction, and cases of performance of agreement, see 2 Story Eq., 8, 1106. As Gilliam knew the partnership had not realized enough to pay the $5,000, we insist that the legacy in the will was intended by him as a satisfaction of the sum stipulated in lieu of dowry. Roper on Legacies, by White, vol. 2, ch., 185 ; ib. ch., 105 to 108. For the doctrine on this point, see 2 Story Eq., § 1102 to 1112; Roberts on Wills, 420 to 426 ; 1 Pierre Williams, 323 ; J. C., 225; 2 Vernon Ch., 558 ; 3 Atk., 419 ; 2 Vesey Jr., 409 ; 3 Pierre Williams, 227; 2 Vesey Jr., 464 ; 2 Roper on Legacies, ch., 18–54, p. 95. The law abhors a double portion. Roberts on Wills, 437 to 442, 428; 2 Story Eq., § 1106, and 1102 to 1112. The contract was a jointure, and by express terms bars all right to dower. Paige Ch. Rep., 511. See also, 2 Vesey Jr., 463 ; 3 Vesey Jr., 516, 528–9 : 2 Story Eq., § 1109 to 1120.

We insist that the admission of parol evidence, touching the intentions of the testator, Gilliam, in his will, as to the legacy of $5,000 to complainant, was in accordance with the rules of law, and that the court did not err therein. Gresley's Eq. Ev., 210; note No. 5; Maddock R., 360 ; 5 Vesey, 85; Hinchliffe v. Hinchliffe, 3 Vesey, 516; Pole v. Lord Summers, 6 Vesey, 309; also, Gresley's Eq. Ev., 213; 2 Russ. & M., 269–300.

*J. A. Orr*, on same side.

Insisted that the objection to the ante-nuptial contract between Gilliam and Mrs. Dennis, as evidence, for want of the necessary United States revenue stamp, is fatal, and cannot be cured. That the case therefore stands before the court without any marriage contract whatever. The complainant having answered the whole of the defendant's cross-bill, such answer overruled her demurrer. On this point the following authorities, in addition to those cited in the foregoing brief by Gen. Davis, are referred to: Story's Eq. Pl., § 442; Fall v. Haftner, 4 Miss., 607.

The complainant objected to the admissibility of extrinsic evidence concerning the intention of the testator as to the $5,000 legacy to complainant. This testimony was clearly admissible under the act of the legislature and the ordinance of the convention of 1865. The act of 1865 expressly provides that where there is a promise to pay money between 1862 and 1865, it shall be presumed that such payment was to be made in Confederate money. But this testimony was clearly admissible on another ground. The complainant rendered it both competent and essential as rebutting evidence on our part. In making out the case, she endeavored to show, by the testimony of witnesses, that she was to receive other than Confederate money. Clearly we had a right to rebut this testimony by any other competent proof.

The above are the prominent exceptions to the evidence and pleadings; and these points we think are demonstrated:

1st. That the marriage contract is invalid, and the complainant is entitled to receive nothing under it.

2d. The demurrer of complainant was overruled by the answer, and we are not required further to notice it.

3d. Our testimony shows that the will contemplated the payment of the legacy of $5,000 in Confederate currency; the act of the legislature established this construction.

The complainant elected to take under the will, which she had a right to renounce, but she did not do so, and now she is bound by her election. 2 Story's Eq. Jurisp., § 1111, p.

460, and the numerous authorities cited by Gen. Davis, fix the legacy as having been intended by the testator as a satisfaction and discharge of the marriage contract debt. She can, therefore, only take the $5,000 legacy in Confederate money, worth, according to the testimony of the witnesses, only $250 at the date of the marriage contract.

SIMRALL, J.:

Three important points are made by counsel: First, whether as claimed for the plaintiff in error, the jurisdiction of the probate court, over the bequest to Mr. Gilliam is exclusive. Second, is the legacy a satisfaction or performance, of the ante-nuptial settlement, so as to put Mrs. Gilliam to her election. Third, has she lost the benefit of the marriage settlement, because the instrument is unstamped.

1st. The argument is, that Mrs. Gilliam had instituted a proceeding in the probate court, against the executors to secure the legacy of $5,000; a tribunal which had, to the exclusion of the chancery court, jurisdiction to order its payment, and it was therefore an usurpation in the chancery court to stay that suit by injunction, and to withdraw from it, to itself, the subject matter in dispute.

It was declared in Blanton v. King, 2 How., 856 and Carmichael v. Brown, 3 How., 252, followed by a long train of subsequent adjudications, that the jurisdiction conferred by the constitution on the probate court, was exclusive; so exclusive that the chancery court was ousted of cognizance over a large class of subjects which therefore belonged to it.

From 1832 to 1860, our books are full of cases attempting to define the boundary which separated the two courts. In truth, no subject has so much perplexed and embarrassed the appellate court as this. The chancery had unquestionably the cognizance of the rights of Mrs. Gilliam under the marriage contract, and would draw to itself all collateral subjects necessary and proper to be considered in order to a full, complete, and final adjudication of those rights. If, therefore, it was as contended by the executors, that the legacy was an ademption of the portion provided by the

ante-nuptial settlement, it would not be possible to settle the claims of Mrs. Gilliam under the settlement, without also ascertaining the extent to which, if at all, these would be modified, or affected by the will. It would be altogether proper, in this aspect of the case, to stay the proceedings in the probate court, until the point were canvassed in the chancery suit. Mrs. Gilliam insisted that she was entitled to the benefit of both legacy and marriage settlement. The executors, on the contrary, assert that the former was in performance or satisfaction of the latter. The powers and jurisdiction of the chancery court were broader, more pliant, and flexible in its modes of redress, fully competent in one litigation, to adjudicate finally in respect to both the settlement and bequest, and could, therefore, well assume, as it did, entire cognizance over the subjects.

2d. Is Mrs. Gilliam entitled to the marriage contract and the legacy? Is the one an ademption in full, or *pro tanto* of the other? The general presumption is against double portions. When the object appears to be to make a provision, and that object has been effected in one instrument, it should not be suspected that a like provision, in a second instrument, was intended as a repetition of the first. If the benefit to the donee be different in species, the presumption of satisfaction will not arise. Powell on Devises, 433, note 4. It may be rebutted by the acts and declarations of the testator. 2 Story Eq., § 1102. To make this presumption arise, the thing substituted, should not be less beneficial, either in amount, certainty of time of enjoyment, or value, than the thing due or contracted for. 1 Vesey, 521. In cases of *satisfaction*, the presumption will not hold, when the thing is less valuable than the thing contracted for, since satisfaction implies the doing of something equivalent, and the presumption is much weakened when the thing substituted is not equivalent to the thing contracted for. If the thing done can be considered as a *part performance* of the thing contracted for, it shall be so taken.

In Litchmen v. Earl of Carlyle, 3 P. Williams, 211, there
VOL. I—29

was a covenant to settle lands of a certain value; a subse-- quent purchase of lands of a *smaller* value, which were at the covenantor's death undisposed of, and which went by descent to the covenantee, shall be intended as a part performance, as it may be presumed, he intended to purchase more lands afterwards, and settle the whole according to the covenant.

In Blandy v. Widmore, 1 P. Williams, 423, the agreement was, if B, the intended wife, should survive A, her intended husband, A should leave B £620, and A accordingly covenanted with B's trustees that his executors, within three months after his decease, should pay B £620, if she should survive him. A died intestate, upon which B, the wife, by the statute of distribution, became entitled to a moiety of the personal estate, which was much more than the £620.

The Lord Chancellor said he would not take this covenant as broken; the agreement was to leave the widow £620; she gets, as distributee, much more than that, which shall be accounted as satisfaction of, and including in it, her demand, by virtue of the covenant.

In Wilcox v. Wilcox, 2 Ver., 638, a father covenanted to settle an estate of £100 per annum on his eldest son, and left lands of the value of £100 per annum, to descend upon his son. This was held to be a satisfaction of the covenant, to make the settlement.

Goldsmidt v. Goldsmidt, 1 Swann, 216, was very carefully considered. By articles of agreement made in contemplation of marriage, Abraham Goldsmidt covenanted that in case he should die in the life-time of his wife, his executors or administrators should, within three months next after his decease, pay to Martha Goldsmidt, her executors, etc., £3,000. The will authorized the executors to divide the property of all kinds and descriptions, in such ways, shares, and proportions as to them should appear right. The executors never made division, and it was agreed that the estate fell for its disposition under the statute of distributions.

The master of the rolls declared the rule to be settled that the distributive share of the widow, in case of absolute

intestacy, is considered as performance of a covenant by which the husband had undertaken that she should receive a fixed sum at his death, provided, that her share is equal to that sum. The question is at rest. These marriage settlements do not stand on the footing of ordinary debts. During the life of the husband there is no breach of the covenant— no debt. The case reposes on the ground that the widow has received, under the statute, what was stipulated to be paid her in the articles. It is a question of *performance* if the distributive portion equals or exceeds the amount secured to her by the articles. In cases of testacy the question is one, nakedly, of intention, on the part of the testator, that the legacy shall be in lieu or satisfaction of the covenant. The rule was said by the equity judge in this case, to have been established for a hundred years. Subsequent to this, Lord Eldon in Guthshore v. Chalie, 10 Vesey, Jr., went into the cases, and considered the principle as put at rest by the authorities.

In a late case, reported in 5 Mylne & Craig, 29, Lord Cottenham said all the decisions upon questions of double portions depend on the declared or presumed intentions of the donor. The presumption in equity is against double portions, because it is not thought probable, when the object appears to be to make a provision, and that object has been effected by one instrument, that the repetition of it in another, should be intended as an addition to the first. It was also held in this case that the fact of whether the provision of the will was a performance or satisfaction of an antecedent covenant to provide a portion, or whether it was a gift, might be proved by internal evidence furnished by the will.

In Loyd v. Harvey, 2 Rus. & Mylne, 310 (13 Eng. Ch. Rep., 51), it was ruled by the master of the rolls, that parol testimony (which in that case were the declarations of the testator in his last illness) was admissible for the purpose of showing whether the legacy was the bestowment of a gift, or the ademption of the covenant.

Sir James Wagram, vice chancellor, an equity judge of

great learning, and accustomed to much study and investiga-
tion, in forming his judgment in Kirk v. Eddowes, 3 Hare,
509, on a review of the cases, came to the conclusion that
parol evidence was to be received, not for the purpose of
affecting the will or its construction in any sense, but to
establish an independent fact whether the one portion was in
substitution of another. If the provisions were made by
separate instruments, parol evidence was not admissible
upon any question of the construction of either, or to show
that the instruments were made for any other or different
purpose from that expressed in the writing. If admissible to
prove an ademption, it is to be received also on the other
side. The testimony is not admitted on either side for the
purpose of proving in the first instance with what intent
either writing was made, but only to ascertain whether the
presumption which the law has raised be well or ill founded.

Mr. Roper, in his valuable treatise on Legacies, 1 Rop., 346,
409, thus sums up the result of the cases: " The law may
be considered as settled, that declarations made by the testa-
tor, to any person, at any time, whether as part of the trans-
action or not, are admissible in evidence on the question of
ademption."

In Hull v. Hill, 1 D. & Walk., 94–111–133, Sir Edward
Sugden, chancellor, made a most elaborate review of this
subject. The cases examined by him were attempted to be
classified by Mr. Redfield thus: " 1st. When the legacy is
claimed to have been adeemed by the father, or one stand-
ing *loco parentis,* parol evidence may be received in aid of
the construction to the same extent as in other cases. 2d.
Where the presumption of law is according to the natural
import of the words of the will, to receive parol evidence
were to contradict the will. But where the presumption is
contrary to the primary and more obvious language of the
instrument, such evidence may be let in. 3d. Where the
legacy is last in order of time, and the presumption is that it
shall be construed or held as satisfaction of an existing debt,
or a stipulated portion, it seems more difficult to admit parol

evidence. Hence, in most cases of this character, the parol testimony has been rejected." The case before us falls within this last classification.

The doctrine of ademption, as set out in the English authorities, have been fully sanctioned by the American courts. Paine v. Parsons, 14 Pick., 320 ; Clark v. Jetton, 5 Sneed, 229 ; Rogers v. French, 19 Ga., 320. In Rogers v. French, parol evidence was admitted on the point of the intention to adeem.

The investigation we have made into the subject, both of the ademption and parol evidence, to establish or remove the presumption of that intent, have impressed us with the painful vacillation and uncertainty which have marked the course of the decisions. With many jurists, it has been regretted that the doctrine of satisfaction, performance or ademption has been pushed so far, and the tone of the modern cases is to accept it as a rule of equity, because it has been sanctioned by a weight of authority which no court would feel at liberty to disregard.

We do not feel called upon in this case to express any opinion on the extent to which the rule may go, for the admission of evidence extrinsic the will, on the point of the intention to adeem. It seems to be agreed in all the cases, that if the will itself is explicit, either the one way or the other, there is no room for the admission of the extrinsic evidence.

At last, like most others arising on last wills and testaments, the purpose is to arrive at what the testator really meant and intended. If the will itself fairly expresses the testamentary mind, there is no reason to go outside the instrument to get foreign aid.

On questions of interpretations it is always competent by parol to prove the situation of the testator, the condition, character, etc., of his property, etc., so that the court as nearly as may be, may realize the surroundings of the testator, his relations to the subject with which he is dealing, and thereby be the better qualified to reach his meaning and purposes

through the language employed in his will to express them. The testimony shows this state of affairs at the date of the will. Gilliam had unshaken faith in the success of the Confederate cause, and confidence in the ultimate value of its currency. In his business he had accumulated about $25,000 of this currency, which was then on hand. He doubtless believed that profit would be made out of the crop of 1864, the first year of his marriage, and therefore from this source the $5,000 which in all events he was to pay his wife for her jointure, would come. The profits which he anticipated at his marriage would flow from a long series of years of successful planting, and which were to be divided between himself and wife for the benefit of their respective children, was about being brought to an end by impending death. He knew in the then condition of the country (the war flagrant) that agriculture made no substantial monied returns. Thus regarding his relations to his property and family, he says in his will, to his executors : " To see that his contracts are fulfilled, and that his wife, Mary Ann Gilliam, have a dowry of five thousand dollars in currency." We understand the testator as directing this payment in lieu of the sum to be paid her, for her portion or dowry, under the marriage articles. What was secured to the wife by these articles was in the stead of dowry and share of personalty ; what a widow could take by law in spite of any will the husband might make. In the testator's mind the term dowry comprehended this. What the testator meant, then, was that his executors should pay his widow what he had contracted to give her, at his decease, for her dowry in his estate. This provision was meant to be in performance, or satisfaction of the marriage contract.

It would follow, then, that Mrs. Gilliam is not entitled to the benefit of both the marriage settlement and the legacy ; and that the latter would be *pro tanto*, a satisfaction of the former. We say *pro tanto*, because we are satisfied that this legacy was contemplated by the testator to have been paid in Confederate money. If there be ambiguity as to the sort

of currency meant, it is a latent ambiguity, explainable by parol testimony. The proof is clear, that the testator had on hand a large amount of this currency, and not over forty or fifty dollars of any other kind; and that he believed the Confederate currency would ultimately turn out to be valuable, reducing this to the value of the circulating medium of the United States, and it would be worth only three or four hundred dollars.

We do not, however, put the same construction on the marriage settlement. The parties naturally looked forward to many years of happiness and prosperity. They did not rush into the connubial relation, urged by the impulses of passion and affection alone, but calmly considered the act in relation to others, who stood dependent, as children, upon each of them, as head of a separate family. Their conflicting interests were to be looked to and harmonized. Gilliam was rich, the father of several children; Mrs. Dennis was a widow, with children, and if not poor, in moderate circumstances. The little property which she controlled was to be added to his larger estate. Prudent, economical, and judicious management was to preside over the whole, and the profits equally divided. If, however, Gilliam should decease before five thousand dollars had been made for the wife's part of the profits, then she should be paid that sum out of his estate. These stipulations and provisions for her to be in lieu of dowry or distributive share in his estate. For these benefits, the wife surrendered her marital rights to a property of the husband, of three thousand acres of land, and a personalty estimated at $25,000 or $30,000. The most valuable feature of the contract, to her (and such both parties esteemed it to be), was the division of the profits and income, equally. This is a continuing contract, which may and was expected to be in the course of fulfillment for a term of years. There was no time when either party, as survivor, looked to settle with the estate of the decedent under the contract. The marriage might continue ten, fifteen, or twenty years, unbroken. The sort of currency in which the five

thousand dollars was to be paid, could not have been taken into account, because neither party could fix upon a day, near at hand, or in the distant future, when an adjustment and settlement could, by its terms, be made.

This view of the contract is fortified by that provision which reads, "if the five thousand dollars shall not be realized from net income and increase of property, the deficit, either in money or *property*, shall be made up from his estate.

When a first examination of this record was made, it seemed to us that the effect or consequence of not stamping the marriage contract necessarily arose. We therefore invited counsel to furnish us with full briefs and arguments on the point. The conclusion to which we have come, after a careful consideration, is, that Mrs. Gilliam had the advantage of this writing, as an instrument of evidence, in the chancery court. Its admission, in evidence, was for her benefit, and at her instance. And that the executors, not having prosecuted a cross-appeal, they cannot complain in this court of the decision of the chancellor in admitting it in evidence. It would, therefore, be a profitless discussion to go into the examination of the cases, and the reasoning of the courts on the subject. And any conclusion we might come to, would not be obligatory on ourselves or the inferior courts.

Let the decree of the chancellor be confirmed; the plaintiff in error to be taxed with costs in this court, but to recover costs in the chancery court.