## Buckner's Administrator v. Martin, et al.

(Decided April 23, 1914.)

## Appeal from McCracken Circuit Court.

1. Wills—Bequest for Educational Purposes—When Beneficiary May Use.—A mother in her last will set apart $2,000.00, or so much thereof as might be necessary for the purpose of educating her daughter, who, at the time the will was written, was seventeen years old. The mother died suddenly when the daughter was about eighteen, and on the day of her mother's death, the daughter married. Five years afterwards, and while the fund was yet in the hands of the trustee, the daughter asked that she be allowed to draw on it to pay the expenses of an educational course that she desired to take: Held, that her request should have been granted.

2. Wills—When Legacy to Creditor will be Treated as Satisfaction of Debt Due by Testator.—It is well settled that when a debtor owes his creditors an ordinary debt and gives to the creditor a money legacy or property that amounts in value to more than the debt, the presumption, in the absence of any circumstances showing a contrary intention, will be that the legacy or property was intended as a satisfaction of the debt, this presumption being allowed to give effect to what it may be reasonably supposed was the intention of the testator in making the gift.

3. Wills—Rule that Legacy Will Be Treated as Satisfaction of Debt Looked On With Disfavor—Exceptions.—The rule that a legacy to a creditor will be treated as intended to satisfy a debt due by the testator, is looked upon with disfavor by the courts and is subject to so many exceptions that the courts will only apply it when it appears to have been plainly intended that the legacy should go to discharge the debt. Instances in which the rule has not been applied are: where the will provides generally for the payment of debts; or the legacy is payable at a different time from the debt; or where the legacy is contingent; or where it is of a different nature from the debt; or where the debt is a trust debt.

4. Wills—Facts of Case in Which Legacy Was Not Treated as Satisfaction of Debt.—A mother, who was the guardian of her daughter, died without settling her guardianship, and in her will gave to her daughter a defeasible fee in property double the value of that given to her other children. She only provided for the payment of one debt that she owed, and did not make any mention of her indebtedness as guardian: Held, that the bequest was not intended to satisfy her liability as guardian.

J. D. MOCQUOT for appellant.

CAMPBELL & CAMPBELL, WHEELER & HUGHES and W. A. BERRY for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In May, 1907, Mrs. Bettie Buckner wrote her will, in which she devised to her daughter, Garnett Buckner, a building in Paducah, Ky., with the provision that if she died without living issue the building should be sold and the proceeds divided equally among her other children. To her son Frank she devised a house in Paducah, with the direction that if he died without issue the property should be sold and the proceeds divided between her other children. To her sons, Paul and James, she devised other property. And in reference to certain lien notes held by her she directed that when the notes were collected "that the Fidelity Trust Co. of Louisville, be paid out of such proceeds a note for $2,000.00 which I owe them, and I further direct that the sum of $4,000.00 out of said proceeds realized upon the collection of said lien notes, shall be held by the said Fidelity Trust Co. for the education of my two children, Garnett and Frank. Should one or both of them die before their education is completed, then I desire whatever remains of the above $4,000.00 to be divided between my daughters, Mrs. Flournoy, Mrs. Nettleroth and Mrs. Burnes."

After making certain other special devises she directed that the remainder of her estate be divided equally between her children. She further provided that the Fidelity Trust Company, of Louisville, should have charge of the estate of her two younger children, Garnett and Frank, until they became of age.

About September 1, 1908, Mrs. Buckner died suddenly and on the day of her mother's death, Garnett Buckner, who was then about eighteen years of age, married G. D. Martin.

In 1911 the Fidelity Trust Company, administrator with the will annexed of Mrs. Buckner, filed this suit in the McCracken Circuit Court for a settlement of her estate. To this suit Mrs. Martin and Frank Buckner, yet an infant, filed separate answers in which they set up that Mrs. Buckner as their guardian had received $4,-500.00, the proceeds of an insurance policy, to which they were entitled and that she had never accounted to them for any part of said sum, and they asserted the same as a charge against her estate.

In resisting this charge the administrator admitted that Mrs. Buckner collected the insurance money as guardian and that she had never made any settlement of her accounts as guardian, but it averred that she had invested the insurance money in property owned by her at her death and which was devised by her will to her children. It was further averred that the testatrix devised to Mrs. Martin and Frank Buckner property double the value of that devised to her other children and that she intended to and did by these large bequests to them in excess of what was given to the other children satisfy her indebtedness to them on account of the money in her hands as guardian. Another averment was that if they were allowed to take the estate given to them by the will and have in addition thereto this money, it would give them an estate largely in excess of what was intended by the testatrix and largely in excess of what she gave to her other children, although she expressed the purpose in the will after certain specific devises had been satisfied to make her children equal.

Mrs. Martin, in another pleading, set out the provision in her mother's will devising to her one-half of $4,000.00, to be expended in her education and averred that she had never received any part of the $2,000.00 so directed to be expended, and "that she is now living with her relatives and has no immediate means of income or support except through the kindness of her relatives and friends; that she is still a young woman, being just twenty-three years of age, and has not completed her education and that she contemplates applying to the Fidelity Trust Company to provide such a portion of such special devise as may be adjudged to be used for that purpose to provide an education for her, for she states that she has not completed her education but desires to do so."

For answer to this the administrator set up that, when Mrs. Martin married, she voluntarily surrendered her right to draw on this fund for educational purposes and that, having abandoned her opportunity to get an education with the aid of this fund, it was too late to ask that any part of it be devoted to her education after she had been married for about five years.

Pending the suit, the case was referred to the commissioner to report the assets in the hands of the administrator and the value and amount of the various bequests and devises, and his report shows that, excluding the amount set apart for their education and the amount in the hands of Mrs. Buckner as their guardian, Mrs. Martin and Frank Buckner had or would receive under the will property worth about twice as much as either of the other children.

The case having been submitted for hearing on the pleadings, the court adjudged that the administrator should pay to Mrs. Martin and to the guardian of Frank Buckner $2,250.00 each, this being the amount of the funds to which they were entitled in the hands of Mrs. Buckner as their guardian when she died. It was further adjudged that "$2,000.00 or such portion thereof as may be necessary for that purpose, of said $4,000.00 devise, may be used by the trustee to complete the education of Garnett B. Martin and to pay her expenses in the way of board, lodging, clothing and tuition while being educated, if she should be educated; and if said $2,000.00, or any portion thereof is not consumed for the purposes indicated, or the said Garnett B. Martin fails to use same for her education, then any residue thereof may be used for the purpose of paying for the education of Frank Buckner, if necessary."

It was further adjudged "that $2,000.00 or such portion thereof as may be necessary for that purpose, of said $4,000.00 devise, may be used by the Fidelity Trust Company, to complete the education of Frank Buckner and to pay his expenses in the way of board, lodging, clothing and tuition while being educated, if he should be educated; and if said $2,000.00, or any portion thereof is not consumed for the purposes above indicated, or the said Frank Buckner fails to use same for his education, then any residue may be used for the purpose of paying for the education of Garnett B. Martin, if necessary."

From so much of this judgment as allowed the claim of Mrs. Martin and Frank Buckner for $4,500.00, the money in the hands of Mrs. Buckner at her death as guardian, and from so much of the judgment as directed the expenditure of $2,000.00, or such part thereof as might be necessary for the education of Mrs. Martin, the administrator appeals.

Taking up first that part of the judgment that directed the administrator to pay Mrs. Martin for educational purposes $2,000.00, or so much thereof as might be necessary for that purpose, the argument is made on behalf of the administrator that the testatrix, in setting apart this sum of $2,000.00 for the education of Mrs. Martin, intended that so much of this amount as might be necessary should be expended for the purpose of her education while she was a young girl or woman, unmarried and attending school as young ladies usually do. That when Mrs. Martin married and assumed the obligations of a married woman, she, by this act, indicated a purpose not to devote any more time to securing an education, and thereby forfeited her right to use any part of the bequest for the purpose of defraying the expenses of an education, and that it is too late for her, after an interruption of five years, to now insist that any part of this bequest be set apart to enable her to obtain or complete her education.

It seems entirely probable that when Mrs. Buckner set apart this sum for the purpose of educating her daughter that she contemplated that so much of it as might be necessary would be expended in securing an education before she assumed the duties of a wife, and that it did not occur to her that her daughter, who, at the time the will was written was a girl about seventeen, doubtless attending school, would marry as soon as she did and abandon her school course. But the prominent purpose in the mind of the testatrix in making this provision was that so much of the sum set apart might be used as was necessary for the purpose of educating her daughter. She did not fix any time within which her daughter should receive the education to be provided by this fund, nor did she place any limitation whatever upon the character of education her daughter should receive, or when or where she should go to receive it. There is no intimation that she desired her daughter to continue without interruption her school or college course, or expression indicating that lack of continuity

in attending school or failure to pursue her studies in the regular or customary way would forfeit her right to this bequest.

The large purpose in the mind of the testatrix, that her daughter should have this amount for the purpose of affording her such an education as she might desire, should not be curtailed by any narrow construction that would defeat the object of the testatrix. As we look at it, when there is expended for the beneficiary of this bequest the sum set apart by the testatrix and for the purpose intended her desire will be more fully carried out than it would be by saying that because Mrs. Martin did not pursue her studies in the ordinary and systematic way that young ladies usually do, or because her opportunities to obtain such an education as she desired were interrupted for a time by a change in her condition in life, she should be deprived of the sum the testatrix set apart for this specific purpose.

Of course there might be a state of case in which the beneficiary of a fund like this would forfeit his right to it by a failure to avail himself within a reasonable time of the advantages afforded by the gift, and cases might arise in which the situation of the beneficiary and the circumstances surrounding him would be such as to indicate an abandonment of any purpose to avail himself of the benefits conferred by the fund. But the case we have does not fall within these exceptions. Mrs. Martin is yet a young woman. Indeed she has just reached an age when the fund set apart for her education can be expended by her to more advantage than it would have been if used earlier in life. She has now reached the years of sober discretion and judgment that will enable her to take up such studies and acquire an education along such lines as will better fit her to discharge whatever duties she may be called on to perform and we perceive no reason why she should be denied the right to use this fund for the very purpose to which it was dedicated.

From inferences that may be drawn from the record we may assume that Mrs. Martin is dependent on her own resources for a livelihood, and if, with the assistance of this bequest, she can acquire an education that will assist her in making a livelihood, it may safely be said that the fund which is yet in the hands of the administrator will be devoted to a more helpful and beneficial purpose than the testatrix had in mind when she

made the bequest. Under the circumstances of this case we feel sure that the judgment permitting Mrs. Martin to expend this fund in executing the purpose for which it was intended is correct.

The other question is presented by that part of the judgment giving Mrs. Martin and Frank Buckner a recovery of the amount in the hands of the testatrix as their guardian when she died.

It is urged with much force that when Mrs. Buckner with her own hands wrote her will, she had in mind the fact that this fund was in her possession as guardian, and for the purpose of accounting for it to her children who were entitled to it, she gave them, without expressing any other reason therefor, property largely in excess of what she had given to each of her other children and in excess of what they would have received had she provided for the payment of this sum to them and then made them equal with her other children in the distribution of her estate. It may further be observed that this view is also strengthened by the fact that in her will she did not provide for the payment of her debts generally or apparently recognize that she owed any debts except the note for $2,000 to the Fidelity Trust Company, which she directed to be paid.

It is further said that to allow these two children this fund in addition to the property given them by the will would operate to defeat the expressed purpose of the testatrix that her estate, after setting apart specific devises and bequests, should be divided equally between her children. Resting on these facts and plausible inferences, it is strongly contended that the testatrix intended, by the large bequests and devises to these children, to satisfy her indebtedness to them, and, believing that in this way she had done so, did not think it necessary to make any provision for the payment of the fund in her hands to which they were entitled.

It will thus be seen that the argument against the allowance of this claim as a debt is necessarily put upon what it is conceived was the intention of the testatrix in not making provision in her will for the payment of all of her debts or this debt and in giving to these two children more than she gave to her other children. It is of course a well known rule in the construction of wills that the courts will endeavor to carry out the intention of the testator. But we do not understand that this rule in its full force has ever been applied to a state of case

in which it is attempted to discharge a subsisting indebtedness by a legacy or devise. Of course many cases can be found in which it has been ruled that a legacy to a creditor was intended to and did satisfy his debt against the testator, but this principle is looked upon with such disfavor and is subject to so many exceptions that the courts will only apply it when it appears to have been plainly intended that the legacy should go to discharge the debt. Generally speaking, it is based on the presumption that when a debtor owes his creditor an ordinary debt and gives to the creditor a money legacy or property that amounts in value to more than the debt, the presumption, in the absence of any circumstances showing a contrary intention, will be that the legacy or property was intended as a satisfaction of the debt, this presumption being allowed to give effect to what it may be reasonably supposed was the intention of the testator in making the gift.

We do not think, however, that it can be said in this case that the testatrix intended that the bequest to these children should be a satisfaction of the debt she owed them as guardian or that it should be so treated. In arriving at her intention we do not attach controlling importance to the fact that she specified only the particular debt that she owed the Fidelity Trust Company. This debt, as the testatrix knew and so declared in her will, was evidenced by a note, and evidently she had well in mind the existence of this debt when writing her will; but whether she had in mind the sum of money that she owed her children as guardian, is another question. In writing her will she may not have thought of this obligation, or may not have regarded it as a debt, or may not have considered it necessary to make mention of it in her will, or may not have known what her duty and liability as guardian was. So that the mere fact that she did not mention this indebtedness is not, under the circumstances, sufficient to create the presumption that the legacy or bequest was intended as a satisfaction of this indebtedness. Indeed it seems more probable that if, when she came to write her will, she had this liability as guardian in mind or intended that the legacy should be treated as a satisfaction of it, that she would in some way have given expression to what her purpose was with reference to this liability; and her silence on this subject rather creates the impression

that it was not her intention that the bequest to these children should be deemed a satisfaction of it.

If the debt due by the testatrix to these children had been an ordinary debt or a debt evidenced by a note or other written obligation executed by her to them, the presumption that the bequest was intended as a satisfaction of it would be much stronger than it is under the existing circumstances. The general rule adopted by the courts on the subject of a legacy being treated as a satisfaction of a debt is thus stated by Story in his Equity Jurisprudence, Vol. 2, Sec. 1122:

"But, although the rule, as to a legacy being an ademption of a debt, is now well established in equity, yet it is deemed to have so little of a solid foundation, either in general reasoning, or as a just interpretation of the intention of the testator, that slight circumstances have been laid hold of to escape from it, and to create exceptions to it." After stating a number of exceptions, this learned writer proceeds to say, "On the other hand, where a creditor leaves a legacy to his debtor, and either takes no notice of the debt, or leaves his intention doubtful, courts of equity will not deem the legacy as either necessarily or *prima facie* evidence of an intention to release or extinguish the debt; but they will require some evidence, either on the face of the will, or *aliunde* to establish such an intention."

In Pomeroy's Equity Jurisprudence, third edition, Vol. 2, Secs. 527, 528, in speaking of this subject, the author says: "This general rule being based upon artificial reasoning, has been distinctly condemned by able judges. It is not favored by courts of equity; on the contrary, they lean strongly against the presumption, will apply it only in cases which fall exactly within the rule, and will never enlarge its operation. * * * In consequence of this strong leaning against the presumption, it is well settled that courts of equity will take hold of very slight circumstances connected with any particular case, and will regard them as sufficient to remove the case from the operation of the general rule, and to prevent the presumption of a satisfaction from arising."

This general statement is followed in succeeding sections by a number of exceptions to the rule that have been universally adopted. Among the instances in which it will be presumed that the bequest was not intended as a satisfaction of a debt are those in which the legacy is

payable at a different time from the debtor. For example, as where the debt is payable at the testator's death and the legacy is payable at a specified time thereafter. Another instance is when the legacy is contingent. And yet another where the legacy is given for a different interest or is of a different nature from the debt.

In 40 Cyc., page 1885, abundant authorities are cited showing the disfavor with which the rule is regarded and the disinclination of the courts to enforce it.

In the leading Kentucky case of Cloud v. Clinkinbeard, 8 B. Mon., 397, Mrs. Cloud, who had resided with and rendered services for Clinkinbeard, sought, after his death, to recover the value of the services so rendered. As a defense to this claim the executors showed that Clinkinbeard in his will had given to Mrs. Cloud five hundred dollars, payable in twelve months after his will should be recorded, and also all of his household furniture. In holding that the indebtedness of Mrs. Cloud was not satisfied by these bequests, the court said:

"But the rule is not allowed to prevail where the legacy is of less amount than the debt, even as a satisfaction *pro tanto;* nor where there is a difference in the times of payment of the debt, and of the legacy; nor where they are of a different nature as to the subject matter; nor where there is an express direction in the will for the payment of debts.

"The legacy of the household furniture to the plaintiff, Mrs. Cloud, being a legacy of specific chattels, and the plaintiff's demand being for money, and its amount unliquidated, the debt and the legacy are of a different nature, and the presumption of satisfaction does not arise, this legacy not being embraced by the rule which allows a legacy to operate as a satisfaction of a debt.

"Neither is the other legacy of five hundred dollars embraced by this rule. It is payable twelve months after the testator's will should be recorded. The plaintiff's demand, if Mrs. Cloud had a right to compensation for her services, was due when the testator died; indeed it was a debt that accrued yearly, if at all, whilst the services were being rendered. There being then a difference in the times of payment, no presumption of satisfaction arises."

In Van Riper v. Van Riper, 2 N. J. Equity, 1, Phillip Van Riper had in his hands as administrator when he died, certain funds due to James and Philip Van Riper.

Phillip Van Riper in his will devised certain property to the beneficiaries of this fund, and when they brought suit to recover the fund, the executors of Phillip Van Riper asserted that their claims were satisfied by the bequest. In holding that this defense was not available, the court said:

"In the first place, the testator in express words directs his executors to pay all his just debts. In the second place, in the devise to the complainants of the lands, the will directs the division to be made between them when Phillip should arrive at age, when he was to take possession of his share; and in like manner with James, when he should arrive at age; and in the meantime the executors to receive the rents, and out of his estate generally to give them a good common education and trades. The five hundred dollars was not to be paid to them until they severally arrived at age. All the cases agree that a present debt can never be satisfied by a contingent legacy. Nor can there be any reasonable presumption that this testator ever intended to pay a demand due at the time, by legacies to be payable at a future day. The debt may also be considered in this case in a measure as unliquidated; he had never settled his accounts as administrator. They are all open to this day, and it seems from the answer of these defendants, that they have considerable difficulty in ascertaining how much the balance due is. This case is in my judgment made stronger, from the fact, that the debt due by the testator was not in his own personal right, but as the representative of another man's estate. From all these circumstances, it would be going too far, and pressing the rule beyond its proper limits, to consider the provisions made in this will in the light of a satisfaction to the complainants."

Other cases illustrating the disposition of the courts not to treat a legacy as a satisfaction of the debt unless all the facts and circumstances clearly show that such was the intention of the testator are: Strong v. Williams, 12 Mass., 390, 7 Am. Dec., 81; Reynolds v. Robinson, 82 N. Y., 103, 37 Am. Rept., 555; Gilliam v. Chancellor, 43 Miss., 437, 5 Am. Rep., 498; Glover v. Patten, 165 U. S., 394, 41 L. Ed., 760; Lisle v. Tribble, 92 Ky., 304; Mulheran v. Gillispie, 12 Wend. (N. Y.), 349.

Applying to the facts of this case the principles of law announced in the authorities cited, we think the be-

quests to these children should not be treated as a satisfaction of the indebtedness of the testatrix to them as guardian. The facts of the case bring it well within three recognized exceptions to the rule: First, the debt due by Mrs. Buckner was a debt due by her as trustee and not individually, and this made it a preferred debt against her estate, as provided in section 3868 of the Kentucky Statutes. It was not in the category of ordinary debts, and was of a different nature from the bequests. Second, the debt due by her as guardian does not appear to have been fixed by any settlement made by her and was in a sense unliquidated, and it was due immediately upon her death, while the property devised was by the terms of the will placed in the custody of the Fidelity Trust Company with directions to take charge of and retain it until these children became of age. Third, the debt due by Mrs. Buckner was due directly to these children. It did not depend on any contingency or the happening of any event, while the bequest to them only invested them with a defeasible fee in the principal part of the property, as the will provided that if either of them died without issue the estate so bequeathed should be divided equally among her other children.

For the reasons indicated the judgment is affirmed.