# White v. Chrisman's Ex'rs.

May 20, 1941.

J. P. Harrison for appellant.

Duncan & Duncan for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing in part and affirming in part.

This case involves the construction of certain parts of the holographic will of J. F. Chrisman, who died in 1938. The will was written in 1935. The record contains a stipulation of facts which sets forth that, upon the death of Chrisman's wife in 1930, he and his sister, Mrs. Sallie White, plaintiff below and appellant here, entered into a contract under which Mrs. White was to move into her brother's home and keep house for him; as payment for such services Chrisman agreed to devise to his sister by will a reasonable sum commensurate with such services, and as further payment, Mrs. White was to and did receive one-half of all sums realized from the sale of chickens, turkeys and eggs from the time of the making of the contract until Chrisman's death.

The first paragraph of the will made certain specific bequests, including lands, house furnishings and farm equipment, to the children of B. L. and Ina Ramsey.

This paragraph concludes with these words: "* * * provided further that this bequest shall not be subject to reduction in any manner to meet the bequest hereinafter made." The second clause of the will is as follows:

"I give and bequeath unto my sister, Sallie White the sum of ($500.00) five hundred dollars. I feel that this amount is ample for Sallie White in view of the fact that I have made a home for her since Sept. 30, 1930, also a home for her daughter Lucille White a good deal of the time free of charge and have made it possible for her to earn considerable money by raising turkeys and chickens, selling eggs and other things while living in my home. I further feel that this amount is sufficient, in view of the fact that I loaned one thousand dollars ($1000.) to her son J. C. White December 20, 1926 which to this date has not been paid. For these reasons I direct that no money in addition to the amount specified be allowed or given to Sallie White."

The bequests in clauses three through eleven, plus that in the second, amount to $17,000. The eleventh clause of the will is followed by these provisions:

"The foregoing specific bequeaths are made upon the expectation that the total sum of my estate, after all debts have been paid, will be sufficient to meet the bequests so made. In the event that the net amount of my estate, after all debts and costs of administration are paid, shall not be sufficient to meet these specific bequests then each specific bequest, except that to the children of B. L. and Ina Ramsey in Article one of this will, shall be reduced in the proportion that the actual net value of my estate bears to the total of these specific bequests, and if there is a balance over then the bequests be increased the same way.

"I direct that if any devise or bequest herein shall prove invalid or void, or if any beneficiary is dead or cannot take under this will, the devise or bequest so made shall be divided proportionally among the remaining beneficiaries named herein."

Shortly after Mr. Chrisman's will was probated, Mrs. White filed a claim with the executors for some $2,700 under an alleged contract for services rendered Chrisman as his housekeeper. This claim was denied.

She then brought suit for the amount claimed. The executors denied the existence of the contract and made a plea of limitations, and for further answer set up that Mrs. White was without means of support, and that as a matter of mutual convenience to her and Chrisman she moved into his home; that at no time did Chrisman promise to pay her for the services rendered; "that, notwithstanding said fact, the decedent, by his last will and testament, devised to the plaintiff the sum of $500.00"; that the services claimed to have been rendered by Mrs. Chrisman were not worth more than $500; and that that amount, less a deduction for inheritance tax, was tendered as payment in full for the alleged services. The first paragraph of Mrs. White's reply set forth that Chrisman agreed to pay by testamentary provision for the services upon which her claim was based, and that for that reason the plea of limitations set up by the executors was of no avail. After denying certain affirmative allegations of the answer, Mrs. White admitted that Chrisman bequeathed to her the sum of $500, but denied that this amount was in payment of the claim upon which she was suing. The result of that suit was a judgment for $1,500 in favor of Mrs. White, which appears to have been satisfied in full before this suit was commenced.

It developed that the net amount of Chrisman's estate was some $34,000 instead of $17,000, as he obviously estimated it to be when he made his will in 1935. Mrs. White instituted this suit seeking a construction of the will which would permit her to share ratably with the other legatees. Only the executors answered. Their position is that the second clause of Chrisman's will specifically limited Mrs. White's bequest to $500 and also that the judgment in the former action should be credited with this bequest. The trial judge ruled that Mrs. White's bequest was limited to $500 and that no credit should be allowed on the $1,500 judgment. Mrs. White has appealed and the executors have filed a cross-appeal.

We will dispose of the contention of the executors first. We have noted that the record contains a stipulation as to the existence of the contract under which Mrs. White cared for Chrisman's household. The appellees admit that courts do not indulge in the presumption that a bequest to a creditor of a testator is in payment of a debt, if the amount of the legacy is less than the amount

of the debt, or when there is a direction in the will as to the payment of debts. See Buckner's Adm'r v. Martin, 158 Ky. 522, 165 S. W. 665, L. R. A. 1915B, 1156. They contend, however, that the second clause of Chrisman's will shows clearly that he intended the bequests to Mrs. White to be in satisfaction of his indebtedness to her. We think otherwise. The clause begins with the words, "I give and bequeath to my sister, Sallie White, the sum of ($500.00) five hundred dollars." There is no specific reference to any contract. Further, there is nothing in the will or the record to show that a home was furnished for Mrs. White's daughter, Lucille, at her request. No reason is given why she should be charged with a $1,000 loan made to her son by Chrisman in 1926. As a matter of fact, the third clause of the will directs that the J. C. White note be cancelled. The $500 bequest to Mrs. White was made on the basis of a net estate of $17,000. It is significant also that the will was made some three years before Chrisman's death. Can it be contended seriously that the testator meant to estimate the value of his sister's future services, and to compensate her for them and for her past services with a bequest of $500? We think not. When called upon to interpret a will we look to it as a whole, and also the circumstances under which it was made, to ascertain the intent of the maker. McGinnis v. Moore, 278 Ky. 587, 129 S. W. (2d) 141. It must not be overlooked that the part of the will quoted above, which follows clause eleven, refers specifically to all "bequests" or "bequeaths" except those made to the Ramsey children in the first clause. Chrisman made it clear that the bequests to those children should be in a class to themselves, for, as we have seen, he so directed in two places in his will. No such distinction is made in regard to the bequest to Mrs. White. There are other circumstances which should be mentioned. It must not be overlooked that Mrs. White was Chrisman's sister. For eight years she kept his home for him, and, apparently, in a satisfactory manner. True it is that she was furnished a place to live and that she received some compensation in the way of chicken and egg money. But having a place to live and the assumption of the responsibility of keeping a sizeable home are two different things. We find no basis for the view that Chrisman meant to give less to his sister, who was keeping his house for him under a contract whereby he agreed to compensate her

for her services, than to some of his other relatives whose bequests ranged from $500 up to $2,500. It follows that it is our view, when the will is looked upon as a whole, and in the light of the circumstances surrounding its making, that Mr. Chrisman did not intend the "bequeath" to Mrs. White to be compensation for the services rendered by her in keeping his home.

We have noted that when Chrisman made his will in 1935, he was of the opinion that his net estate would approximate $17,000. We think the last sentence in clause two, namely, "For these reasons I direct that no money in addition to the amount specified be given or allowed to Sallie White," was written with that fact in mind. We have noted also that only the bequests to the Ramsey children in clause one were excluded from the scaling up and down of bequests depending upon the net amount of Chrisman's estate. When the will as a whole is examined, we think it clear that Chrisman meant that the bequest to Mrs. White should be treated in the same manner as all bequests except those made to the Ramsey children in clause one.

It follows from what has been said that the judgment should be and it is affirmed on the cross-appeal, and reversed on the appeal, with directions that that part of it be set aside and a judgment entered in conformity with this opinion.

Whole Court sitting.