##### IN THE

# HIGH COURT OF ERRORS AND APPEALS

##### FOR THE

### STATE OF MISSISSIPPI.

## JANUARY SPECIAL TERM, 1866.

### LEWIS L. MAGEE *et al. v.* GEORGE McNEIL and WIFE.

1. WILL, DEPENDENT ON CONTINGENCY, WHICH HAPPENS, VOID.—Where the existence of a last will and testament is made to depend upon a contingent event, which comes to pass, the will can have no effect, and is void.

2. SAME : CASE IN JUDGMENT.—P., a soldier in the Confederate army, made his last will and testament to this effect, "If I never return home I want all I have to be my wife's." The will was made whilst he was absent from home in the army. P. returned home and in a few weeks afterwards died. Held, that the will was to take effect upon the contingency that the testator never returned home, and that event having happened, the will had no effect and was void.

3. DECLARATIONS OF TESTATOR : WHEN INADMISSIBLE AS EVIDENCE.—Declarations of a testator are not admissible as evidence to add to, explain, or in any manner control or affect the construction of a will.

4. SANITY OF TESTATOR : WHEN IRRELEVANT.—The condition of the mind of the testator, after the making of his will, which depends for its existence and operation on the non-happening of an event which comes to pass, is irrelevant.

5. WILL : CONSTRUCTION AND EFFECT OF : QUESTIONS OF LAW FOR THE COURT.—The construction and effect of a will are questions of law to be decided by the court, and are not to be left as matters of fact to the determination of the jury. Whether a paper offered in evidence is testamentary

2

in its character, or whether it is to take effect absolutely, or only on condition, is to be determined by proper instructions of the court to the jury.

APPEAL from Probate Court of Franklin county. Hon. R. M. Nelson, special judge.

Appellants, as the next of kin of D. H. Parker, deceased, filed their petition at the February term, 1864, of the Probate Court of Franklin county, against appellees, as executors of the last will and testament of the said D. H. Parker. At the March term, 1863, of said court, on an ex parte application by appellees, the will of said Parker had been admitted to probate. The petition of appellants was filed for the purpose of contesting the validity of this will, and asks that an issue of *devisavit vel non* be tried by a jury. The issue thus tendered was accepted by appellees, and submitted to a jury.

The will is in the words and figures following:

"MY DEAR WIFE,—I have just read your letter over again. I cannot read it without crying. Your request respecting my being sent home if I die shall be complied with if possible. I will so instruct Dean, Bethea, and Cato, and they will, I know, attend to it. But I do pray to God that it will not have to be done by anybody, but that I may live to get home to you again, and enjoy your sweet companionship for many years to come. But we do not know about these things, and it is well enough to arrange them before hand; *and if I never get back to you I want all I have to be yours.*

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*
\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"Kiss you and babe, and be of good cheer,
                "For I am yours,

                                    "HENDERSON."

This letter was addressed to Mrs. Matt. N. Parker, McCall's Creek, Franklin county, Miss., who was the wife of the writer, D. Henderson Parker, and now Mrs. Matt. N. McNeil, one of the appellees.

It was admitted that the letter was in the handwriting of D.

Henderson Parker—was written about 13th March, 1862, at Henderson, Tennessee, mailed about that time to his wife, and received by her; that D. H. Parker was over the age of twenty-one, a resident of Franklin county, Miss.; that previous to his death, he returned home, got back to his wife, and died at home on the 13th May, 1862.

Dr. Bethea, a witness for appellees, testified—That he knew D. H. Parker; was with him in the army, and in same mess.

He was asked by appellees, did witness at any time before or after the 13th March, 1862, hear D. H. Parker say what disposition he intended to make of his property? Question was objected to by appellants, on the ground that the evidence sought to be elicited was irrelevant and inadmissible. The court overruled the objection, and appellants excepted.

Witness testified that he had frequently heard deceased say that his intention was that his wife should have all of his property after his death; that he spoke of it earnestly and with solemnity.

Knows nothing about the instrument offered as a will; does not know when or under what circumstances written.

Appellees asked Thomas A. Magee, and Dr. W. P. Dodds, what was the mental condition of the deceased in May, 1862, and just before his death. Question objected to; objection overruled, and appellants excepted. These witnesses testified that at the time deceased was of perfectly sound mind.

The following instructions were asked by appellees, and given:

2. That if the jury believe from the evidence that the paper offered in evidence is the will of Parker, then the whole intention of Parker in writing said paper is the law which regulates the construction of it.

3. That if the jury believe, from their construction of the whole writing in evidence as the will of Parker, together with other facts and circumstances in evidence before them, that it was the unconditional intention of Parker that his widow should have his property at his death, then they may find that the paper offered as his will is such will.

4. That if they believe that the paper offered is the will of Parker, and that he considered it a testamentary paper, and that he intended that his wife should have his property, whether he got back to her or not, that then and in that case it was not necessary to the validity of said will that he should have been mentally and physically competent to make a will after Parker got home.

The jury returned a verdict in favor of appellees, and appellants appealed to this court.

*E. Safford & F. H. Sleeper* for appellants.

The only operative testamentary words, if any, in the letter propounded as a will, are, "If I never get back to you, I want all I have to be yours." The testamentary disposition then was plainly on condition that he never should return. But it is established that he *did* return, and was with his wife at his death. Upon this statement of the case, then, it seems plain that the instrument in question is not the will of the deceased, the testamentary disposition being plainly revoked, according to its own terms, by his subsequent return. We refer the court to case cited in 1 Lomax on Exrs. p. 19. The first is from 2 Har. and Johns. Maryland Rep. p. 346. A paper "written somewhat in the form of a *letter*," states, "If I should not come to you again, my son shall pay," &c. The writer went to Kentucky and returned, and lived several weeks thereafter. Held, that as the writer had returned before his death, the paper could not be admitted to probate as a *will*. A person going to Ireland provided by will, that if he died before his return, certain directions were to be followed, legacies bequeathed, &c. He went to Ireland, *returned*, and afterwards died. Held—the will was *contingent*, and the testator having returned, it was of no effect. These cases being precisely similar to the case at bar, we think the court must hold this will to be *contingent*, and, the testator having *got back*, of no effect. For this reason we think the court below erred in overruling motion for a new trial.

It also erred in overruling objections to the question to their

witness Dr. Bethea. It was, "Did you at any time before or after the 13th of March, 1862, hear deceased say what disposition he intended making of his property after his death?" This not being an attempt to establish a nuncupative will, this question is not relevant. His parol declarations, even at the date of writing, as to his intended disposition of his property after death, are inadmissible. The answer to the question shows an intention to prove the will *unconditional;* that he meant his property to be hers *whether he returned or not*, in other words, "to contradict the terms of a valid written instrument." See Greenl. Ev. 2d ed. vol. 1, sec. 275. The rule referred to applies to wills. Ibid. sec. 287. The only case according to sec. 289, authority last quoted, where parol evidence of intention is admissible, is where a doubt arises as to which of two or more things or persons is meant, each one answering the words in the will. In all other cases, if the intention cannot be made appear by the writing explained by circumstances, there *is* no will. There being no latent ambiguity in this case, the court erred in overruling the objection.

It erred, also, in overruling the objection to the question asked witnesses Thos. A. Magee and Dr. Dodd, as to the condition of Parker's mind on the 6th or 7th of May, 1862. The point to be determined was not whether he was sick or well, sane or insane, but whether or not he had "got back" to her, the sole contingency on which the testamentary disposition depended. If he *had got* back, it was revoked. For reasons above stated, the court erred in overruling the motion to rule out the evidence of Bethea, Magee, and Dodd, in answer to the questions objected to.

For substantially the same reason, we think the court erred in giving the 2d, 3d and 4th instructions asked for by appellees, and in refusing the 1st and 6th instructions asked for by appellants.

By the concluding clause in the bill of exceptions, it will be seen that all exceptions noticed in the bill may be made available, as if separate bills had been filed.

*W. P. Harris* for appellees.

We think the " contingency " contemplated in writing the letter admitted to probate as a will, was *death*, if that can be so regarded.   Its contents show the intention of the testator to be, to provide for his wife, at a time when the chances of life were precarious.   In writing to him, she had spoken of his possible death, and its consequences to her, which, in no way, depended on place or even time of his death.   He was attached to her, they had no children, and no change of condition took place between the time of writing the letter and his death. " If I never get back," means no more than " if I die without making other provision for your support, this is my will, and you shall be my heir."   The internal evidence shows clearly that he made the will, because he feared he might die without making provision for his wife.   Courts are cautious in constru- ing wills to be *contingent*, i. e., in countenancing implied revo- cations—1 Williams on Exrs. p. 102 et seq. . . Our statute recognizes only certain modes of revocation.   Rev. Code, p. 432.

Evidence that he still adhered to his will, and that he *did not* consider it revoked by his return, is admissible, as such evidence always is, in cases of implied revocation.   See autho- rity before cited.   If he had stated distinctly, " I adhere to the will," the statement would have been admissible, and circum- stances tending to establish such intention are equally so.   He uses the words " If I never get back " in the sense of " If I perish by wounds or disease, you are to be my heir."   He re- turns home soon after sick of disease, of which he shortly dies, without any change of circumstances.   To maintain that he had no intention that the will should take effect, would be a hard rule indeed.

ELLETT, J., delivered the opinion of the court.

This is an appeal from the Probate Court of Franklin county.

The appellants presented their petition to contest the validity

of a paper admitted to probate as the last will and testament of D. H. Parker, deceased, and thereupon an issue of *devisavit vel non* was made up, and tried before a jury in the said court. The alleged testamentary paper was a letter from the deceased to his wife, the female appellee, in the course of which the following language is used, to wit : "But we do not know about these things, and it is well enough to arrange them before hand, and if I never get back to you, I want all I have to be yours." The deceased was at the time a soldier in the army of the Confederate States, and it was admitted that the paper offered was in his handwriting, and was written at Henderson, Tennessee, on or about the 13th March, 1862, and mailed to his wife on that day, and afterwards received by her, and that he was over twenty-one years of age, and a resident of Franklin county. It was also admitted that previous to his death he got back to his wife, and died at home in said county, and was with his wife at the time of his death. It was, moreover, proved by witnesses that he reached home about the 6th or 7th of May, 1862, in feeble health, but in sound mind, and that his wife met him at Brookhaven, and accompanied him from thence to his home, a distance of about twenty miles, where he died.

The appellees were permitted to prove, after objection, that while absent in the army, both before and after the 13th of March, 1862, the deceased had several times expressed his intention that his wife should have all his property after his death.

It is contended on behalf of the appellants that this will was contingent, depending upon the event of the testator getting back to his wife, and that as he did so get back, the will can have no effect, but is void. This proposition seems to be clearly established by the authorities.

In *Ponsons* v. *Lanoe*, 1 Vesey, Sen. 189, where the will was in the following form : "If I die before my return from my journey to Ireland, that my house and land at Farley Hill be sold," &c., and the testator returned from his journey to Ireland, Lord Chanceller Hardwicke held that it was merely a "provisional contingent disposition, and consequently no part thereof was intended to take effect but in the event of his dying

before his return; in which view it was made." There was proof in that case that the testator kept that will by him; it did not appear that he made any other; and he spoke to his friends of a will, showing he did not intend to die intestate, of which he expressed some detestation. But the Lord Chancellor said " collateral or parol proof cannot be taken into consideration, which would be dangerous, and what the court, since the statute of frauds, is not warranted to do; for nothing will set it up but some act done by him after that event, to republish the will, or defeat the condition."

In *Sinclair* v. *Hone*, 6 Vesey, 607, the testator, residing with his wife in the island of Dominica, and intending to make a voyage to England, took leave of his family, and went to the place whence the packets sailed for England, and while there, in the hourly expectation of embarking, he made a codicil to his will, as follows : " In case I die before I join my beloved wife, Augusta Sinclair, I leave her all my property," etc. The packet accidentally sailed without him, and he returned to his house, where he remained with his family until the ensuing year, when he carried them to England, and subsequently went abroad, and died at Lisbon. It was argued there by very eminent counsel, as it has been here, that this was not a conditional, but an absolute disposition, by a man foreseeing the event of his not joining his wife again, and that the construction might be, lest he should never join her. But Sir William Grant, the Master of the Rolls, said " that would be infinitely too violent a construction. The words are words of as positive and express condition as can be. The question is only, whether a contingency exists or not; and I am of opinion there was condition and contingency." And he held that the condition had happened by the return of the testator under the circumstances, and that the codicil therefore did not take effect.

In the case of Todd's will, 2 Watts & Sergeant, 145, the will, made in contemplation of a journey, was as follows : " My wish, desire, and intention now is, that if I should not return (which I will, no preventing Providence), what I own shall be divided as follows," etc. The testator returned in bad health, but able

to attend to business, and died about a month after. The court held the will to be provisional, and not intended to serve in the event of his death at home, and refused to admit it to probate.

The same course was pursued in the Supreme Court of Maryland, in the case of *Wagner* v. *McDonald*, 2 Har. & Johns. 346. The words of the testamentary paper were : " If I should not come to you again, my son will pay," etc. The writer went to Kentucky, and returned, and lived several weeks after ; and it was held that the paper could not be admitted to probate as his will. 1 Lomax on Exrs. 19 ; 1 Williams on Exrs. 163 ; *Duppa* v. *Mayo*, 1 Saund. R. 278—Note 4.

These authorities are sufficient to show that the precise question involved in this case has undergone repeated and thorough investigation by courts entitled to the highest respect, and ought to be considered decisively settled. The condition is plainly expressed. There being no latent ambiguity, the intention is to be collected from the language employed, and that language is unequivocal. The event having happened upon which the existence and operation of the testamentary disposition depended, the will became inoperative and void, and ought not to have been admitted to probate.

There is no sound principle upon which the testimony in regard to statements made by the deceased while absent in the army, and before his return to his home, as to his intention that his wife should have all his property after his death, could have been admitted to go to the jury. They were not such testamentary words as could be established as a nuncupative will, and no attempt appears to have been made to give to them that effect. The statements were not made with any reference to the paper offered for probate, for the witness states that he knows nothing about that, and does not know when, where, or under what circumstances it was written. And even if made with special reference to it, they would not be competent as evidence to contradict, add to, explain, or in any manner control or affect the construction of the written instrument. Whether that instrument was conditional and eventual, or not, depended upon its terms, and it could not be competent to establish by

parol evidence a different intention from that which the language imports.

Nor can it be seen what possible bearing the condition of the mind of the deceased at the time of his return home, and subsequently, whether sound or unsound, could have had upon the case. If sane, he might have made another will; if insane, he could not. It appears that he was perfectly sane, and competent to transact any business. If any inference could be drawn from this fact in relation to his omission to make another will, the most obvious conclusion would be that he intentionally abstained from doing so. But the evidence was irrelevant, and ought to have been excluded.

Besides these errors in the admission of testimony, the court erred in refusing to charge the jury as requested by the appellants, as follows, to wit : "If the jury believe from the evidence that after writing the letter in question, D. H. Parker, the writer, did get back to his wife, they must find a verdict against the will."

The construction and effect of a will, or other writing, are questions of law to be decided by the court, and are not to be left as matters of fact to the determination of the jury. The only questions for the jury were, whether the paper was written by the deceased, and whether the event upon which its existence depended, had happened. It was for the court to determine, by proper instructions to the jury, whether the paper was testamentary in its character, and whether it took effect absolutely, or only on a condition.

The second, third, and fourth instructions given on behalf of the appellees, were in conflict with the views expressed in this opinion, and were therefore erroneous.

The judgment of the court below, establishing the paper in controversy as the last will and testament of Parker, will be reversed, a new trial granted, and the cause remanded.