IN RE IVERSON'S ESTATE
HAWKINS, ET AL. v. ELSTER, ET AL.
(No. 1515; January 17, 1929; 273 Pac. 684)

*George W. Ferguson* of Casper, for appellants.

*Curran* and *Cobb,* for respondents.

484

*George W. Ferguson,* for respondent, in reply.

RINER, Justice.

This matter is before us upon direct appeal to review an order of the District Court of Natrona County admitting to probate an alleged will of one Henry Iverson. The record in the matter discloses the following:

On October 29, 1926, W. G. Hawkins and Ann Elizabeth Hawkins filed in said District Court their petition for the probate of this will. The application was positively verified by both the petitioners, and set forth in substance that they resided in Casper, Wyoming, and that Henry Iverson died September 4, 1926, at Amarillo, Texas, being at the time of his death also a resident of Natrona County, Wyoming; that he then had certain described real and personal property in that county, and left a will dated September 2, 1926, which is alleged to be the last will and testament of the deceased; that W. G. Hawkins was named therein as the executor thereof and Ann Elizabeth Hawkins the devisee thereunder; that G. A. Davidson, Geo. D. Brown, and E. H. McKelvey, all residents of Potter County, Texas, were the subscribing witnesses of the will; that

the testator's heirs at law were his mother and two half-sisters residing in Wisconsin, and a half-brother and an aunt residing in Minnesota; that at the time of the execution of the will, the testator was about fifty-one years old, of sound and disposing mind and not acting under restraint, duress, menace, fraud or undue influence or fraudulent misrepresentation; that the will was in writing, signed by the testator and attested by the witnesses at the testator's request, they subscribing their names to the said will in the presence of the testator and each other, and that at the time of such attestation they were competent witnesses. The probate of the will was prayed, and it was asked that a time for proving it be fixed, and that the subscribing witnesses be directed to submit their written testimony.

Thereafter and on September 17, 1926, the mother of the deceased, the two half-sisters and half-brother, filed their "grounds of opposition to probate of will," verified by local counsel on information and belief, which charged, in brief, that Henry Iverson, at the time he made the will, was incompetent to do so, was subject to undue influence on the part of the petitioners and was unconscious and delirious, and physically unable to sign his name to any written instrument, and that the alleged will was not signed by deceased nor any person for him. It was further charged that deceased died intestate. On January 8, 1927, Ann Elizabeth Hawkins, one of the petitioners, filed her answer to this contest in the form of a general denial, positively verified by her.

July 26, 1927, the affidavits of all three of the subscribing witnesses were filed in the matter in the office of the Clerk of the District Court of Natrona County, the substance of each affidavit being similar to that of McKelvey and to the following effect: That witness resides in Potter County, Texas, knew Henry Iverson on September 2, 1926, and is one of the subscribing witnesses to the

instrument shown to witness and purporting to be testator's last will and testament; that on said date witness knew the other subscribing witnesses, that said instrument was signed by decedent at Amarillo, Potter County, Texas, on September 2, 1926, in the presence of the witnesses Brown and Davidson, and the said Henry Iverson thereupon declared the same to be his last will and testament and requested all three of the witnesses to sign in attestation thereof, and that they all, in the presence of the decedent and each other, did so sign said instrument; that at the time of the execution of the instrument, decedent was about fifty-one years old and was of sound and disposing mind and not acting under duress, menace, fraud or undue influence.

The matter came on to be heard before the court without a jury, on August 2, 1927. The proponents of the will first called and examined several witnesses—not, however, the subscribing witnesses to the will—among them the petitioner W. G. Hawkins, who had been present when the will was presented to the decedent for his signature. Counsel for contestants was allowed to cross examine these witnesses without objection, except as to a few questions. Upon the conclusion of their testimony, and with the affidavits aforesaid in the files before the court in the matter, petitioners rested, and thereupon counsel for contestants announced: "We have no evidence to offer at this time." After argument was had upon the situation as it then stood, the trial court inquired of counsel for contestants: "Don't you think on that feature of it, the will has been proved by the testimony of all of the subscribing witnesses, Brown, McKelvey and Davidson, that has been filed in the case?" To which this response was made: "If that is the case, I have had no notice of it. I did not examine it. I certainly object to the receipt of any such evidence, for certainly I haven't even examined the files." No evidence of

any kind appears to have been then or subsequently offered on behalf of contestants, and on August 20, 1927, the order complained of was entered by the court. This order recites, among other things, that "after examining said petition, and written testimony of G. A. Davidson, Geo. D. Brown and E. H. McKelvey the subscribing witness to said will, for (from) which it appears that said document is the last Will and Testament of said Henry Iverson, deceased; that it was executed in all particulars as required by law, and that said testator at the time of the execution of the same, was of sound and disposing mind, and not acting under duress, menace, fraud or undue influence, and that said testator died on the 4th day of September, 1926; that he was a resident of the County of Natrona in the State of Wyoming, at the time of his death." It is ordered that the will be admitted to probate, and W. G. Hawkins be appointed as Executor thereof.

In the course of the latter's testimony upon the witness stand, detailing what occurred when the will was presented to Henry Iverson for his signature, the following appears:

"A. Mr. Kem talked with Dan Iverson a little while, just about every day affairs, then he asked him if he— he started to read the will to him, he read it twice over, very distinct, got to the name of the beneficiary in the will, his witnesses and myself was present. When he got to the name of the beneficiary, Dan turned to me and says, 'That suits me fine, does it suit you?' I never answered that statement. I had Mr. Kem read it again. He said, Dan Iverson says to me, 'That just suits me, does it suit you?' I said, 'Yes, Dan, but you are forgetting your own family.' He just shook his head. Pretty soon he says, 'Give me that, I will sign it.'

"Q. Did he then sign it?

"A. He then signed it, yes."

It also appears from this witness's testimony that after signing the will, Iverson made the remark that he could not read the signature himself, but no further attempt was made by the testator to again sign the instrument, although the attorney who drew the will, Mr. Kem, was present and suggested it. On cross examination the same witness stated, in response to the question: "Didn't he say, I can't sign my name?" "No, he didn't make any such statement, says he couldn't write any better than he has there, he didn't say he couldn't." The will is not in the record, except by copy.

It is assigned as error and argued that the evidence does not show that deceased signed the alleged will or that it was witnessed by two competent witnesses, as required by law.

In urging these contentions, appellants seem to have overlooked what has been said in the course of several previous opinons of this court concerning the nature of proceedings under a petition to probate a will in this state, and a contest filed challenging its validity. In Wood v. Wood, 25 Wyo. 26, 164 Pac. 844, this court approved the language used in Estate of Latour, 140 Calif. 414, 73 Pac. 1070, 74 Pac. 441, by the Supreme Court of California, where it is pointed out that in every case of a contest of a will before probate there are, in law and in fact, two distinct, and to some extent independent, proceedings before the court, the one being the petition of the proponent for the probate of the will, and the other the contest. The court further said concerning the procedure in such a case, that:

" 'The hearing of these two proceedings must come at the same time, and it is this circumstance which causes the confusion about the proper method of procedure. When the contest comes after probate, as it may do under Section 1327, Code Civ. Proc., this matter is much simpler, and it would not be seriously contended that the contestant should not then have the burden of proof.

At that time the proceeding on the petition has been already heard and determined, and its distinct character is easily perceived. There is, however, no essential difference in this respect between a contest before probate and one subsequent thereto. In either case the hearing of the formal proceeding for probate is presupposed. Where the contest is before probate, and comes on for disposal simultaneously with the petition, the hearing of the contest does not dispense with the hearing and disposition of the petition. In such a case the regular and orderly method of procedure is for the proponent to first present his preliminary proof in support of his petition. These averments, it must be remembered, are not controverted by any pleading. The so-called 'written grounds of opposition' provided for in Section 1312 is not a response to the petition, controverting or avoiding its allegations. It is a pleading collateral to the petition, and related to it only to the extent that it cannot be filed until there is a petition filed, and that it is in some sense subordinate to it, so that if the petition is dismissed, or if it is denied after the hearing of the formal preliminary proof, the contest falls with it. This preliminary proof is addressed to the court alone. * * * If, after hearing this proof, the court is of the opinion that a *prima facie* case is made in support of the will, it should reserve its decision upon the petition, and direct the trial to proceed upon the contest in the manner specified in Section 607; the contestant, as plaintiff, first introducing his evidence in support of his written grounds of opposition, and the proponent, as defendant, then producing his evidence in support of his answer thereto, and in rebuttal of the evidence on behalf of the contestant. If the preliminary proof does not satisfy the court, it should thereupon refuse probate and end the proceeding without further ceremony.' "

In the case of Sewall v. McGovern, 29 Wyo. 62, 211 Pac. 96, it appeared that the proponent of the will there under consideration, had followed the procedure outlined in the Latour case, but, as in the matter at bar, when he offered his formal proof in support of his petition for the probate of the will, the court permitted his cross examination by opposing counsel concerning what happened at the time of the execution of the will. That testimony

brought to a close proponent's evidence in support of the petition. As to what followed, and concerning the situation thus presented, the opinion in the case remarks:

"The court did not then expressly declare whether or not the proponent had made out a *prima facie* case in support of the will, nor is it claimed that a finding upon that question was then necessary, though that is suggested as the proper procedure in the opinion on the petition for rehearing In Re Latour, supra, and was the procedure followed by the District Court in Woods v. Woods, supra. If the trial court had been of opinion that a *prima facie* case had not been made, it would no doubt at this point have refused probate, and thus ended the whole matter without the necessity of investigating the grounds of opposition. As it did not do this, but required the contestants to proceed with their case in opposition to the will, it is plainly indicated that the court was then of opinion that a *prima facie* case had been made by proponent, but reserved its decision upon the petition until the contest could be heard. * * *

"We are not sure that the right of the contestants to appear and cross-examine witnesses at this preliminary inquiry was questioned by any timely objection, but, however that may be, we think no substantial right of proponent was violated by permitting them to do so. Strictly speaking, contestants were not parties to that inquiry, but we think it was within the court's discretion then to avail itself of their aid, and to permit, as cross-examination, questions to which no objections were made at the time. (In Re Cullberg's Estate, 169 Calif. 365, 146 Pac. 888)."

Section 6690, W. C. S. 1920, as amended (Laws of 1925, C. 5), provides:

"If no person appears to contest the probate of a will, the court, judge or commissioner thereof, may admit it to probate on testimony or affidavit of one of the subscribing witnesses only, if the testimony or affidavit shows that the will was executed in all particulars as required by law, and that the testator was of sound mind at the time of its execution."

From the outline we have already given of what occurred on the hearing of the contest, it is apparent that proponents endeavored to make their preliminary formal proof to the court in the manner provided by law for securing the admission of the will to probate where no contest has been filed. The affidavits of the subscribing witnesses to the will were placed before the court, and that proof was supplemented by the testimony of the proponent W. G. Hawkins and others, both upon direct and cross-examination. This proof, addressed only to the court, undoubtedly satisfied it that a *prima facie* case had been made. Undoubtedly, if no contest had been pending, the court would have been bound to admit the will to probate then, as the formal proof fully complied *prima facie* with law, both in the manner of its presentation and its substance. However, as there was a contest before it, the court did not then act, when proponents closed their proof, but turned to contestants, and was told that they would submit no evidence, notwithstanding it was their duty to then proceed, as plaintiffs, to introduce their evidence in support of their written grounds of opposition to the probate of the will, the proponents, as defendants, following thereafter with their evidence in support of their answer. Although the hearing was adjourned to a later date, it does not appear that the contestants, at any time, offered or introduced any evidence in support of their charges challenging the validity of the will, or that they ever assumed the burden of going forward with their evidence, which the law placed upon them. That being so, the situation was, at the time the court made the order now under review as if the contest was non-existent or had been waived. It would seem that no other order than the one complained of could well have been made.

But entirely aside from the matter of procedure, we are satisfied, besides, that the court below reached a

proper conclusion on the main question argued here. It is insisted that the record shows that the testator did not sign the will. We think otherwise. In 28 R. C. L., page 116, Sec. 68, it is said:

"It may be added that the imperfection or illegibility of testator's signature to a will, if he intended it to be a valid signing, will not make it insufficient, and it is immaterial that his hand may have been guided when in the act of signing."

The case of Sheehan v. Kearney, 82 Miss. 688, 21 So. 41, 35 L. R. A. 102, quoting from a Pennsylvania decision (Plate's Estate, In Re, 148 Pa. 55, 23 A. 1038, 33 Am. St. Rep. 805, used the following language:

" 'Exactly what constitutes a signing has never been reduced to a judicial formula. * * * The principle upon which these cases proceeded was, that whatever the testator * * * was shown to have intended as his signature was a valid signing, no matter how imperfect or unfinished or fantastical or illegible, or even false, the separate characters or symbols he used might be, when critically judged.' And we think this clearly correct. It is not necessary that he should write out his complete signature; it is enough that what he writes is intended for, and adopted as, his complete signature."

Under these authorities, the signature affixed by Henry Iverson was, as we read the record, undoubtedly intended for and adopted by him as his complete signature. The undisputed testimony of the proponent W. G. Hawkins is that Iverson was in possession of his faculties at the time the signature was made upon the will. Indeed, the testator definitely noticed the illegibility of his effort and remarked upon it. But as we have seen, mere illegibility does not stand in the way of a signature being a legal one under the circumstances set forth in the record now before us.

494

Our conclusion is, therefore, that the order admitting the will of Henry Iverson to probate was right, and it should be affirmed.

*Affirmed.*

BLUME, C. J., and KIMBALL, J., concur.